# In the United States Court of Federal Claims

No. 15-179L

Filed: November 21, 2017

|  |  |  |
|---|---|---|
| BHL PROPERTIES, LLC, et al., | ) ) ) | Keywords: Rails-to-Trails; National Trails System Act; Fifth Amendment; Takings Clause. |
| Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| THE UNITED STATES OF AMERICA, | ) ) |  |
| Defendant. | ) ) |  |

*Mark F. Hearne, II*, Arent Fox, LLP, Washington, DC, for Plaintiffs. *Lindsay S.C. Brinton*, *Meghan S. Largent*, *Stephen S. Davis*, and *Abram J. Pafford*, Arent Fox, LLP, Washington, DC, Of Counsel.

*Davene D. Walker*, Trial Attorney, Natural Resources Section, U.S. Department of Justice, Washington, DC, for Defendant, with whom was *Jeffrey H. Wood*, Acting Assistant Attorney General, Environment and Natural Resources Division.

**OPINION AND ORDER**

**KAPLAN, Judge.**

This rails-to-trails case was brought by a group of landowners claiming a taking of their property interests in a railroad corridor in Racine County, Wisconsin. At this point in the litigation, all of Plaintiffs' claims, with the exception of a single claim by plaintiff Dennis Lee, have been voluntarily dismissed.

Currently before the Court is Plaintiffs' motion for partial summary judgment as to the government's liability for a taking of Mr. Lee's property. The government has filed a cross-motion for summary judgment. For the reasons set forth below, the government's motion for summary judgment is **GRANTED** and Plaintiffs' motion for partial summary judgment is **DENIED**.[1]

---

[1] As an alternative to its cross-motion for summary judgment, the government moved for a stay. In light of the Court's disposition of the cross-motions for summary judgment, the government's motion for a stay is **DENIED** as moot.

# BACKGROUND[2]

## I. Statutory Framework

Section 8(d) of the National Trails System Act, as amended, represents "the culmination of congressional efforts to preserve shrinking rail trackage by converting unused rights-of-way to recreational trails." See Preseault v. Interstate Commerce Comm'n (Preseault I), 494 U.S. 1, 5 (1990) (footnote omitted). Entitled "[i]nterim use of railroad rights-of-way," the statute authorizes the Surface Transportation Board (STB or the Board) "to preserve for possible future railroad use rights-of-way not currently in service and to allow interim use of the land as recreational trails." See id. at 7; see also 16 U.S.C. § 1247(d) (2012).

By law, a railroad that wishes to abandon a line must secure the STB's approval either by following the regular abandonment process or through an exemption proceeding. See 49 U.S.C. § 10903(a)(1), (d); see also id. § 10502; 49 C.F.R. § 1152.29(a); Barclay v. United States, 443 F.3d 1368, 1374 (Fed. Cir. 2006). Once the railroad files its abandonment request, a "state, political subdivision, or qualified private organization" that wishes to acquire or use the right-of-way for interim trail use and rail banking "must file a comment or otherwise include a request in its filing . . . or a petition . . . indicating that it would like to do so." 49 C.F.R. § 1152.29(a). The railroad must then respond to the potential trail sponsor by informing the STB whether it intends to negotiate a trail use agreement with that sponsor. See id. § 1152.29(b).

If the railroad is willing to negotiate an agreement and if the potential sponsor meets the Board's requirements, the Board then issues either a Certificate of Interim Trail Use or Abandonment or a Notice of Interim Trail Use or Abandonment (NITU). See id. §§ 1152.29(c), (d). The certificate or notice authorizes the railroad to discontinue service, salvage track and materials, and fully abandon the line if no trail use agreement is reached within 180 days of issuance. See id. § 1152.29(c)(1). On the other hand, "if an interim trail use agreement is reached . . . the parties [must] file . . . notice" with the Board. Id. § 1152.29(c)(2).

## II. The NITU in This Case

On January 28, 2014, Soo Line Railroad, doing business as Canadian Pacific, filed a "notice of exempt abandonment of trackage" with the STB. See Wisconsin Landowners' Mem. in Supp. of Their Mot. for Partial Summ. J. (Pls.' Mot.) Ex. 1A, ECF No. 47-2. The notice specified that the trackage was "located between milepost 7.8 +/- and milepost 18.43 +/- (Waxdale Spur) which traverses through United States postal service zip codes 53139, 53182, and 53177 in Racine County, Wisconsin." Id. The railroad noted that "[n]o local traffic ha[d] moved over the line for at least two years and all overhead traffic ha[d] been routed over other lines." Id. at 1. It further stated that it planned on consummating its proposed abandonment "on or after March 18, 2014." Id. at 2.

On February 14, 2014, the STB granted Soo Line authority for an exempt abandonment of the corridor, effective March 19, 2014, subject to the receipt of any petitions from potential trail sponsors. Def.'s Cross-Mot. for Summ. J. & Resp. to Pls.' Mot. for Partial Summ. J. (Def.'s

---

[2] Unless otherwise specified, the facts set forth in this section are not in dispute.

Mot.) Ex. 4, ECF No. 48-4.[3] Two weeks later, on February 27, 2014, the Wisconsin Department of Natural Resources petitioned the STB for a NITU. Pls.' Mot. Ex. 1B, ECF No. 47-3. The department proposed to "use or preserve the land corridor and related real property for interim public transportation and recreational purposes . . . subject to restoration for railroad purposes." Id. at 1–2. On March 13, 2014, the railroad informed the STB that it was "willing to negotiate an agreement for interim trail use with the Wisconsin Department of Natural Resources." Pls.' Mot. Ex. 1C, ECF No. 47-4.

Subsequently, on March 18, 2014, the STB granted the department's request in a "Decision and Notice of Interim Trail Use." Pls.' Mot. Ex. 1D, ECF No. 47-5. The NITU was to last for a period of 180 days, until September 15, 2014. Id. at 3. The STB ordered that "[i]f an interim trail use agreement is reached (and thus, interim trail use is established), the parties shall jointly notify the Board within 10 days that an agreement has been reached." Id. It reiterated that "[i]f an agreement for interim trail use/rail banking is reached by September 15, 2014, for the right-of-way, interim trail use may be implemented. If no agreement is reached, Soo Line may fully abandon the line, upon expiration of the public use condition imposed here." Id. at 4.

The STB has since granted the parties seven extensions of the NITU to complete negotiations for a trail use agreement. See Docket, Soo Line R.R. Co.—Abandonment Exemption—In Racine Cty., Wis., No. AB-57-61-X (STB). The NITU is currently in effect until November 29, 2017. Decision, Soo Line R.R. Co.—Abandonment Exemption—In Racine Cty., Wis., No. AB-57-61-X (STB June 9, 2017).

**III.    This Action**

On February 26, 2015, twenty-two plaintiffs filed a complaint alleging that they owned land underlying Soo Line's railroad corridor and that the STB's issuance of the NITU effected a taking of their property under the Fifth Amendment, for which the government owed them compensation. See Compl. at 23–30, ECF No. 1. On May 15 and August 14, 2015, Plaintiffs filed amended complaints adding thirty-one additional landowners as plaintiffs. See ECF Nos. 6, 10.

On August 8, 2016, following the completion of discovery, the parties filed a joint status report, ECF No. 26, along with a stipulation "regarding title matters," ECF No. 25. In the joint status report, the parties indicated that: 1) Plaintiffs intended to voluntarily dismiss sixty-one of the seventy-four claims set forth in the complaint; 2) the parties had entered a stipulation as to title for six of the claims set forth in the complaint, including the claim of plaintiff Dennis Lee

---

[3] The STB also advised Soo Line that it was required to "file a notice of consummation with the Board to signify that it ha[d] exercised the authority granted and fully abandoned the line," and that if it failed to do so by February 14, 2015, Soo Line's "authority to abandon [would] automatically expire." Def.'s Mot. Ex. 4 at 3.

3

(see ECF No. 25); and 3) the parties intended to file cross-motions for summary judgment to resolve liability as to the remaining seven claims.[4] Joint Status Report at 1–4.

On January 18, 2017, Plaintiffs filed a motion for partial summary judgment as to the government's liability for a taking with respect to ten claims made by six plaintiffs, including the claim of plaintiff Dennis Lee. See Pls.' Mot. at 1, ECF No. 47. On February 21, 2017, the government filed a response and cross-motion seeking summary judgment as to all claims that were not the subject of Plaintiffs' motion for summary judgment. Def.'s Mot. at 1, 22, ECF No. 48. It further argued that the facts in the record did not establish the government's liability with respect to the plaintiffs whose claims were at issue in Plaintiffs' motion, and that Plaintiffs' motion should be denied or the case stayed. See id. at 1.

On April 4, 2017, Plaintiffs moved to voluntarily dismiss certain claims pursuant to Rule 41(a)(2) of the Rules of the Court of Federal Claims (RCFC). ECF No. 51. On April 7, 2017, the Court granted Plaintiffs' motion and dismissed without prejudice fifty-seven claims made by forty-seven different plaintiffs. ECF No. 52.

Four months later, on August 11, 2017, and based upon the receipt of new information from Soo Line, the government revoked its title stipulations as to all plaintiffs except Dennis Lee. ECF No. 61. As to Mr. Lee, the government clarified that while it stood by its stipulation that Soo Line held only an easement over the portion of the railroad corridor that was near Mr. Lee's property, it did not stipulate that the property owned by Mr. Lee is "adjacent" to the railroad corridor. Id. at 2.[5]

Shortly after the government revoked its stipulations, on August 15, 2017, Plaintiffs filed a second motion to voluntarily dismiss, this time as to all of the claims on which they had sought partial summary judgment, except for the claim of Mr. Lee. ECF No. 62. In addition, Plaintiffs filed a response to the government's cross-motion for summary judgement and reply in support of their motion for summary judgment, in which they addressed only Mr. Lee's claim. Wisconsin Landowners' Reply in Supp. of Their Mot. for Partial Summ. J. & Resp. to the Government's Cross-Mot. (Pls.' Reply) at 1, ECF No. 63.

The government filed a response to Plaintiffs' motion to voluntarily dismiss on August 18, 2017. ECF No. 64. It argued that the Court should dismiss the claims with prejudice "given the progress of this litigation." Id. at 1. On September 28, 2017, the Court granted Plaintiffs' second motion for voluntary dismissal, but agreed with the government and dismissed the claims with prejudice. ECF No. 66. Plaintiffs then filed a third motion to voluntarily dismiss without prejudice, on November 10, 2017. ECF No. 68. The government again urged the Court to dismiss the claims with prejudice. ECF No. 69. For the reasons set forth in its September 28,

---

[4] Certain plaintiffs made multiple claims, which is why the number of claims exceeded the number of plaintiffs. See Joint Status Report at 1–4.

[5] The government "also clarifie[d] that the portion of railroad corridor located across Durand Avenue from Plaintiff Lee's property was acquired by the railroad by adverse possession, not condemnation." ECF No. 61 at 2.

4

2017 Order, the Court granted Plaintiffs' motion but dismissed the claims with prejudice. ECF No. 71.

Based on the foregoing, only the claim of plaintiff Dennis Lee remains at issue in this case. The Court held oral argument on the cross-motions for summary judgment as to that claim on November 15, 2017. Order, ECF No. 67.

**DISCUSSION**

**I.   Subject Matter Jurisdiction**

Pursuant to the Tucker Act, the United States Court of Federal Claims has jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a) (2012). The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). A plaintiff, therefore, must establish that "a separate source of substantive law . . . creates the right to money damages." Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).

Here, Plaintiffs allege that the government owes them compensation pursuant to the Fifth Amendment's Takings Clause, which provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The Takings Clause supplies a money-mandating source of substantive law in rails-to-trails cases. Preseault I, 494 U.S. at 11–12. Accordingly, the Court has jurisdiction over plaintiff Dennis Lee's claim.

**II.   The Cross-Motions for Summary Judgment**

**A.   Standards**

The standards for granting summary judgment are well established. Summary judgment may be granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. RCFC 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. An issue is genuine if it "may reasonably be resolved in favor of either party." Id. at 250.

The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). All significant doubts regarding factual issues must be resolved in favor of the party opposing summary judgment. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). "[T]he party opposing summary judgment must show an evidentiary conflict on the record; mere denials or conclusory statements are not sufficient." Id. at 1390–91. "[E]ntry of summary judgment is appropriate against a [party] 'who fails to make a showing sufficient to establish the existence of an essential element to [its] case, and on which [it] will bear the burden of proof at trial.'" Zafer Taahhut Insaat ve Ticaret A.S. v.

5

United States, 833 F.3d 1356, 1362–63 (Fed. Cir. 2016) (quoting Celotex Corp., 477 U.S. at 322) (third and fourth alterations in original).

### B. Takings Liability Standards Under the Trails Act

Under the Takings Clause, the federal government must pay just compensation when it "requires [a] landowner to submit to the physical occupation of his land." Yee v. City of Escondido, 503 U.S. 519, 527 (1992) (emphasis omitted); see also Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 831 (1987) (observing that the appropriation of a public easement across a private landowner's premises "constitute[s] the taking of a property interest"); Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 426 (1982). In a rails-to-trails takings case, the STB's issuance of a NITU results in a compensable taking if a plaintiff has a "state law reversionary interest[]" in the land subject to the railroad right-of-way that is "effectively eliminated in connection with [the] conversion of [the] railroad right-of-way to trail use."[6] Caldwell v. United States, 391 F.3d 1226, 1228 (Fed. Cir. 2004) (citing Preseault II, 100 F.3d at 1543); see also Rogers v. United States, 814 F.3d 1299, 1303 (Fed. Cir. 2015) ("The government must provide just compensation under the Fifth Amendment['s] Takings Clause if the issuance of a NITU results in the taking of private property.").

In analyzing a takings claim based upon the Trails Act, the court must first determine "who own[s] the strips of land involved." See Preseault II, 100 F.3d at 1533. As the Federal Circuit has noted, "if the Railroad obtained fee simple title to the land over which it was to operate . . . the [adjacent landowners seeking compensation for a taking] would have no right or interest in those parcels and could have no claim related to those parcels for a taking." Id. If, on the other hand, the railroad only had an easement rather than fee simple title, the court must look to whether "the terms of the easement[] [were] limited to use for railroad purposes, or [whether] they include[d] future use as public recreational trails." Id. If the latter, then the Court must determine whether "the[] easement[] terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements." Id.

If the railroad only obtained an easement, and its purposes did not include recreational trail use, or if the easement was extinguished prior to trail conversion, then a taking occurs "when a railroad right-of-way is converted to interim trail use under the Trails Act" because "state law reversionary property interests that would otherwise vest in the adjacent landowners are blocked from so vesting." Caldwell, 391 F.3d at 1233; see also Ladd v. United States, 630 F.3d 1015, 1019, 1023–24 (Fed. Cir. 2010). To be entitled to compensation, a plaintiff must demonstrate that she or he is the owner of the burdened estate over which the easement crosses,

---

[6] As the Federal Circuit has noted, because "traditional common law estates terminology . . . . describes an easement as a 'use' interest" rather than as "a 'possessory' interest," a plaintiff's retained interest in land burdened by an easement would not classically be described as a "reversionary" interest. Preseault v. United States (Preseault II), 100 F.3d 1525, 1533 (Fed. Cir. 1996). Regardless of how the plaintiff's retained interest is characterized, "the result upon termination of the easement is the same": the plaintiff's resumption of unencumbered ownership of the property. Id. at 1534.

or, absent contrary evidence of ownership, that she or he is the owner of property adjacent to the rail corridor. See Caldwell, 391 F.3d at 1233; see also Barclay, 443 F.3d at 1373.

In determining the property interests involved, the court relies upon the common law and statutes of the state in which the rail corridor lies, here, the State of Wisconsin. See Preseault II, 100 F.3d at 1533. Under Wisconsin law, when a railroad abandons an easement, "the land goes back to the original owner or his grantees." Pollnow v. State Dep't of Nat. Res., 276 N.W.2d 738, 744 (Wis. 1979). Further, "[i]n the absence of evidence to the contrary, title is presumed to be in the abutting landowners." Id.

### C.    Whether the Government is Liable for a Taking with Respect to Plaintiff Dennis Lee

It is undisputed that Mr. Lee owns a two-acre parcel of land in fee simple that is separated from the rail corridor by a county highway known as Highway 11 (also referred to as Durand Avenue). See United States' Reply Br. in Supp. of Its Cross-Mot. for Summ. J. (Def.'s Reply) at 1, ECF No. 65; Pls.' Reply at 3; Pls.' Reply Ex. 1 at 3, ECF No. 63-1. Plaintiffs contend that in addition to the two-acre parcel, Mr. Lee also owns the land underlying Durand Avenue, burdened by a highway easement held by the county. Because Durand Avenue abuts the rail corridor, Plaintiffs argue, under state law Mr. Lee is presumed to have title to the land underlying the rail corridor as well. Pls.' Reply at 3.

The government, on the other hand, argues that Mr. Lee has failed to prove that he owns the land underlying Durand Avenue. Therefore, according to the government, Mr. Lee cannot take advantage of the presumption that he has title to the land underlying the adjacent rail corridor. Because he has not demonstrated any ownership interest in the land underlying the rail corridor, it argues, his takings claim must fail.

The Court agrees with the government. Thus, there are two deeds in the record representing conveyances to Dennis Lee. The first is a deed recorded November 30, 1977, from Donald B. Lee and Carol Lee to Dennis J. Lee and Suz Anne Lee. Def.'s Reply Ex. 1 at BHL00581, ECF No. 65-1. The second conveyance to Dennis Lee is a quitclaim deed from Suz Anne Lee to Dennis Lee recorded January 12, 1982. Pls.' Reply Ex. 1 at 1. Both deeds contain metes and bounds descriptions of land in "the Southwest ¼ of the Northwest ¼ of Section 25, Township 3 North, Range 21 East," measuring two acres and lying in Yorkville, Racine County, Wisconsin. Id.; Def.'s Reply Ex. 1 at BHL00581.

At oral argument, counsel for Mr. Lee properly acknowledged that these metes and bounds descriptions do not include Durand Avenue. Moreover, the deed to Mr. Lee's immediate predecessors-in-interest, Donald B. Lee and Carol Lee, dated May 28, 1965, described the property granted to them, in pertinent part, as follows: "[t]he East One-Half (E½) of the Northeast One-Quarter (NE¼) of Section 26, Township 3 North, Range 21 East, lying South of Highway 11," and "[t]he West 37 Acres of that part of the South One-Half (S½) of the Northwest One-Quarter (NW¼) of Section 25, Township 3 North, Range 21 East, lying South of Highway 11." Def.'s Reply Ex. 1 at BHL00579 (emphasis added). Further, Plaintiffs have submitted a map prepared by their own expert which shows that to the north, Mr. Lee's property ends at Durand Avenue. See Pls.' Reply Ex. 1 at 3.

7

Notwithstanding the metes and bounds descriptions in the deeds and the language indicating that the land conveyed lies south of Durand Avenue/Highway 11, at oral argument counsel for Mr. Lee insisted that the deeds have no significance and that Mr. Lee has a property interest in the land underlying Durand Avenue. Oral Argument at 2:52pm (answering Court's question about property description in the deed by stating that "it means nothing to me Your Honor"); see also id. at 2:59pm. Among other things, counsel cited the presumption under Wisconsin law "that the abutting owner has title to the center of the highway . . . adjacent to his property, subject to the public easement." Spence v. Frantz, 217 N.W. 700, 701 (Wis. 1928). This presumption may control even where a deed contains language identifying the public highway as the property's boundary, as was the case with the deed to Donald and Carol Lee. See id. But Mr. Lee's reliance on this presumption is unavailing. For even if Mr. Lee is the presumed owner of the land underlying Durand Avenue to its centerline, he would not own the northern portion of Durand Avenue on the other side of its centerline, and he thus still would not own property abutting the railroad corridor.

Mr. Lee also attempts to meet his burden of proving ownership of the land underlying the highway by citing a deed dated September 22, 1926 from one "E.A. Elliot" to Racine County, conveying an easement to the county for the operation of Highway 11. Pls.' Reply at 3–4 (citing id. Ex. 2, ECF No. 63-2). This document is sufficient to establish that E.A. Elliot once owned the land under Durand Avenue in fee simple. But there is nothing in the record showing that Mr. Lee is in the chain of title as successor-in-interest to E.A. Elliot with respect to the land underlying Durand Avenue. In other words, the record contains no evidence of conveyances that link E.A. Elliot's retained interest in the land under Durand Avenue to Mr. Lee. And the language of Mr. Lee's deeds is to the contrary. It is thus entirely possible that someone other than Mr. Lee (such as, for example, a neighbor whose land also abuts Durand Avenue either to the north or the south) is the successor-in-interest to Mr. Elliot as to the land Mr. Lee claims he owns.

At the oral argument, it became apparent to the Court that Mr. Lee had not expected the government to challenge his ownership of the land underlying Durand Avenue and that accordingly he had not gathered the documentary evidence needed to prove the chain of title. Indeed, Plaintiffs' counsel several times pointed out that, in her experience, the government has not required plaintiffs to supply evidence that establishes the entire chain of title in circumstances such as those presented here. The Court, of course, has no way of knowing the extent to which the cases to which counsel referred are similar to this one. But even assuming that they were identical, on August 11, 2017, the government clearly signaled that it intended to challenge Mr. Lee's ownership interest by filing a Notice of Revocation and Clarification of the Parties' Stipulations in which it stated that "it is not stipulating that the property owned by Plaintiff Dennis Lee is adjacent to the railroad corridor." ECF No. 61 at 2. Further, it is Mr. Lee's burden to prove his ownership of the land abutting the railway corridor; it is not the government's burden to disprove it.

In short, to defeat the government's motion for summary judgment, Mr. Lee must do more than simply cite the absence of evidence in the record that another individual currently owns the land underlying Highway 11. He must produce evidence sufficient to support his claim that the land at issue belongs to him. This he has not done. Plaintiffs' motion for partial summary judgment is therefore **DENIED** and the government's cross-motion for summary judgment is **GRANTED**.

## CONCLUSION

Based on the foregoing, the government's motion for summary judgment is **GRANTED** and Plaintiffs' motion for partial summary judgment is **DENIED**. The Clerk is directed to enter judgment accordingly. Costs are allowed to the government in accordance with RCFC 54(d)(1).

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge
